# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3103

_____

Jodi Michaelle Carlson,                      *
                                             *
    Plaintiff - Appellant,           *
                                             *    Appeal from the United States
v.                                           *    District Court for the
                                             *    District of Minnesota.
Hyundai Motor Company; Hyundai               *
Motor America, Inc.,                         *
                                             *
    Defendants - Appellees.          *

_____

Submitted: June 10, 1998
Filed: January 15, 1999

_____

Before LOKEN and HEANEY, Circuit Judges, and JONES,* District Judge.

_____

LOKEN, Circuit Judge.

In this diversity action, Jodi Michaelle Carlson appeals the district court's[1] dismissal of her strict liability, negligence, and breach of warranty claims against

_____

*The HONORABLE JOHN B. JONES, United States District Judge for the District of South Dakota, sitting by designation.

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

Hyundai Motor Company and Hyundai Motor America, Inc. The district court concluded that Minn. Stat. § 169.685, subd. 4, known colloquially as the seat belt gag rule, bars these claims. We affirm.

In April 1995, Carlson was a passenger in a Hyundai Excel automobile that left the road and rolled over. Though she was wearing a seat belt and a shoulder harness anchored to the door frame, Carlson was thrown from the vehicle through an opening in the upper rear portion of the front passenger door because, in the words of Carlson's Amended Complaint, "when the doorframe bent out it eliminated any effective passenger restraint." Carlson suffered serious injuries. In 1996, she brought this action in Minnesota state court, seeking substantial damages. The non-resident defendants removed.

All of Carlson's claims are premised upon a crashworthiness theory -- that the Hyundai vehicle had a defectively designed and manufactured seat belt system and door frame that caused Carlson to be ejected during the accident, resulting in substantially greater injuries than had she remained in the vehicle. For example, Paragraph XI of Carlson's Amended Complaint alleges that Hyundai Motor Company is strictly liable because "[t]he defective and unreasonably dangerous condition of the passive seat belt system and door frame and the vehicle were the direct cause of the injuries and damage sustained by plaintiff."

The statute in question, Minn. Stat. § 169.685, subd. 4, provides that "[p]roof of the use or failure to use seat belts . . . or proof of the installation or failure of installation of seat belts . . . shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle." This statute was enacted in 1963, before Minnesota courts recognized crashworthiness as a theory of common law liability. In Olson v. Ford Motor Co., 558 N.W.2d 491 (Minn. 1997), the Minnesota Supreme Court held that the

statute applies to crashworthiness claims and effectively bars all such claims that are premised upon allegedly defective seat belt systems.

Relying upon <u>Olson</u> and the contemporaneous Minnesota Court of Appeals decision in <u>Schlotz v. Hyundai Motor Co.</u>, 557 N.W.2d 613 (Minn. App.), <u>cert. denied</u>, 118 S. Ct. 80 (1997), defendants moved to dismiss this action as barred by § 169.685, subd. 4. After the Governor of Minnesota vetoed a bill that would have materially amended the statute, the district court granted this motion. The court explained that Carlson's claim of a defective seat belt system is barred under <u>Olson</u> because, "If Carlson cannot offer evidence of how her seat belt was installed in the car and that she wore it during the accident, then she cannot prove that a defective seat belt caused her injuries." The court further held that Carlson's claim of a defective door and window frame are also barred by the seat belt gag rule because, "Nowhere in her Amended Complaint does Carlson state that a defect in the door frame alone caused her injuries. Thus, as alleged, all of Carlson's claims are dependent upon evidence of her use of the car's seat belt, and the joint failure of it and the door frame to prevent her from being ejected from the car."

On appeal, Carlson concedes the district court (1) appropriately dismissed her seat belt allegations, and (2) "correctly concluded that the seat belt allegations were intertwined with the allegations that the car was defectively designed, manufactured, and otherwise dangerously deficient." However, Carlson argues, the court abused its discretion by dismissing her claims without inviting her to amend the complaint to assert independent claims based upon the allegedly defective door and window frame. This contention was not properly preserved. Carlson did not ask the district court for leave to file a second amended complaint, either before or after the court granted defendants' motion to dismiss her amended complaint. A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend and submitted a proposed amended pleading. <u>See</u> <u>Oliver v. Resolution Trust</u>

Corp., 955 F.2d 583, 585 (8th Cir. 1992); Clayton v. White Hall Sch. Dist., 778 F.2d 457, 460 (8th Cir. 1985).

Even if Carlson had properly preserved this issue in the district court, we conclude that her proposed second amended complaint must be rejected as futile. See Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 225 (8th Cir. 1994) ("Good reason to deny leave to amend exists if the amendment would be futile."). Carlson argues she has a viable claim independent of the allegedly defective seat belt system because, during the accident:

> the door frame was caused to deform causing an opening which allowed the ejection of Jodi Carlson. The seat belt mechanism was not significantly related to the creation of this hole. If she had had her seat belt on she would have been ejected and if she had not had her seat belt on she would have been ejected. Accordingly, there is no reason to refer to the seat belt mechanism in this case.

However, the issue in a crashworthiness case is whether the vehicle design *as a whole* evidences the manufacturer's failure to use reasonable care to prevent auto accident injuries. See O'Grady, Minnesota's Seat Belt Evidence Gag Rule: Antiquated and Unfair in Crashworthiness Cases, 15 WM. MITCHELL L. REV. 353, 367-69 (1989), and cases cited. The seat belt gag rule does not bar evidence by Hyundai that its seat belt system was designed to prevent passengers from being ejected from the vehicle during accidents. But while that evidence is admissible, § 169.685, subd. 4, bars Carlson from introducing evidence that the seat belt system was installed, in use, and failed to prevent her ejection. If Carlson cannot prove that the seat belt system failed of its essential crashworthiness purpose, then she cannot prove that Hyundai failed to use reasonable care to prevent accident injuries in its vehicle design as a whole. In other words, like the seat belt system and seat back at issue in Schlotz, and the airbag and seat belt system discussed by Justice Page in his concurring opinion in Olson, 558 N.W.2d at 498, the alleged defects in the Hyundai seat belt system and door frame

were inseparably intertwined in causing Carlson's increased injuries. In these circumstances, any amended complaint attempting to separate the two alleged defects so as to prevent application of § 169.685, subd. 4, to bar Carlson's claims would be futile.

Finally, Carlson argues the district court erred in dismissing defendant Hyundai Motor Company because that Korean company was never served and thus the court lacked personal jurisdiction to grant a judgment in its favor. We disagree. Carlson failed to raised this issue in the district court and therefore may not raise it on appeal. Moreover, Hyundai Motor Company voluntarily appeared in the district court and joined in defendants' Rule 12(b)(6) motion to dismiss without contesting the court's personal jurisdiction, thereby waiving that issue. See Fed. R. Civ. P. 12(h)(1). "Because the requirement of personal jurisdiction represents first of all an individual right . . . an individual may submit to the jurisdiction of the court by appearance." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). In this case, Hyundai Motor Company consented to the district court's jurisdiction by voluntarily appearing and is entitled to the *res judicata* effect of the court's judgment in its favor.

The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

From this day forward, passengers thrown from a vehicle due to an alleged structural defect are precluded from pursuing crashworthiness claims under Minnesota law. In my view, this result is mandated by neither the seat belt gag rule nor the decisions of the Minnesota Supreme Court. Accordingly, I respectfully dissent.

The Minnesota seat belt gag rule, enacted in 1963, precludes introduction of any evidence pertaining to seat belt use or nonuse in a suit involving "'personal injury

resulting from the use of a motor vehicle.'" Olson v. Ford Motor Co., 558 N.W.2d 491, 494 (Minn. 1997) (quoting Swelbar v. Lahti, 473 N.W.2d 77, 79 (Minn. Ct. App. 1991)). Five years after the legislature enacted the seat belt gag rule, this court recognized the crashworthiness doctrine, which imposes liability for injuries exacerbated, rather than caused, by defective design or manufacture of a vehicle. See Larsen v. General Motors Corp., 391 F.2d 495, 502 (8th Cir. 1968). In Larsen, we held that an automobile manufacturer "is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision." Id. at 502. We explained:

> Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

Id. at 503. In Mitchell v. Volkswagenwerk, AG, we elaborated:

> [T]he extent of the manufacturer's liability depends upon whether or not the injuries involved are divisible such that the injuries can be clearly separated and attributed either to the manufacturer or the original tortfeasor. If the manufacturer's negligence is found to be a substantial factor in causing an indivisible injury such as paraplegia, death, etc., then absent a reasonable basis to determine which wrongdoer actually caused the harm, the defendants should be treated as joint and several tortfeasors.

669 F.2d 1199, 1206 (8th Cir. 1982) (citing Mathews v. Mills, 178 N.W.2d 841 (Minn. 1970)).

When the seat belt gag rule was enacted, there "was still considerable debate as to the efficacy of seat belts as a safety device." Olson, 558 N.W.2d at 495. In 1986,

-6-

the Minnesota legislature formally ended the debate by enacting legislation requiring seat belt use. See Minn. Stat. Ann. § 169.686 (West Supp. 1999). The Minnesota Supreme Court has noted that the legislature may not have solely intended "to protect a plaintiff from being penalized for contributory negligence for failure to wear a seat belt" by enacting the seat belt gag rule. Olson, 558 N.W.2d at 495. Instead, the legislature intended to strike a balance between car crash victims and auto manufacturers. See id. Contrary to the majority's holding, there is no evidence suggesting that the legislature intended the seat belt gag rule to preclude all crashworthiness claims when a passenger is thrown from a vehicle and alleges structural defect.[2] In fact, by construing the seat belt gag rule so broadly, the majority ignores the balance struck by the legislature and, instead, virtually immunizes auto manufacturers from crashworthiness claims as long as seat belts were installed in the vehicle.

Here, Carlson wishes to amend her complaint to assert that the opening created when the roof of her car peeled off during the crash stated a cause of action under the crashworthiness doctrine. She argues that she would have been thrown from the vehicle regardless of whether she was wearing a seat belt. The majority asserts that since Carlson cannot introduce evidence stating that the seat belt system was in use and failed to prevent ejection and since "the alleged defects in the Hyundai seat belt system and door frame were inseparably intertwined in causing Carlson's increased injuries," she "cannot prove that Hyundai failed to use reasonable care to prevent accident injuries in its vehicle design as a whole." I do not read "as a whole" so narrowly nor

---

[2]While the court of appeals' decision in Schlotz may suggest a contrary result, we are not bound by that decision, see Horstmyer v. Black & Decker, Inc., 151 F.3d 765, 773-74 n.10 (8th Cir. 1998), and I do not read it as a final statement of the law by Minnesota's highest court. In fact, the Minnesota Supreme Court decision in Olson came out almost a full month after Schlotz, yet did not even refer to Schlotz and its expansive interpretation of the seat belt gag rule. I therefore do not believe that the Minnesota Supreme Court would adopt the view endorsed by the majority.

do I see the logical or legal necessity in raising the seat belt issue to determine whether Hyundai was negligent in the design of the vehicle.[3]  In short, the facts of each car crash will vary, and the jury, rather than a federal court of appeals sitting in a diversity action, is the proper body to determine whether an auto manufacturer exercised reasonable care in the design or manufacture of a vehicle.  It is entirely inappropriate for this court to decide the issue as a matter of law.

Under these circumstances, I disagree with the majority's conclusion that Carlson's proposed second amended complaint must be rejected as futile and would remand the case so the district court could entertain her motion to amend her complaint.  Accordingly, I respectfully dissent.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]I concede that, absent the seat belt gag rule, knowing whether a passenger was wearing her seat belt may be relevant in determining whether her injuries were exacerbated by the defective design or manufacture of the vehicle.  It is possible, however, that a design defect would exacerbate injury regardless of whether a seatbelt mechanism exists or is in use.